UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN MANUEL GONZALEZ,

      Petitioner,

    v.

CHARLES PARRA, GARRETT
RIPA, TODD LYONS, ACTING
SECRETARY MARKWAYNE
MULLIN,

      Respondents.

Case No. 2:26-cv-1451-KCD-DNF

_____/

## **ORDER**

Petitioner Juan Manuel Gonzalez is a Cuban citizen subject to a final order of removal. His path to that order runs through a string of serious criminal convictions—including kidnapping, robbery, and aggravated assault. (Doc. 1 at 3-4.)[1] After completing his state prison sentence and spending more than a decade living in the community under an order of supervision, Gonzalez was returned to immigration custody on October 31, 2025. He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, asking this Court to order his immediate release.

Gonzalez argues that his continued detention violates the Fifth Amendment's Due Process Clause as interpreted by the Supreme Court in

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

*Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 6-10.) Respondents oppose the petition. (Doc. 4.) For the reasons below, Gonzalez is correct.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems,

2

the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 699. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Gonzalez satisfies the initial temporal requirement. ICE took him into custody nearly seven months ago. Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Gonzalez has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal. He does so by pointing to a stubborn diplomatic reality: he is a citizen of Cuba, and Cuba is currently embroiled in political conflict with the United States. As his petition details, the Cuban government has a history of

3

refusing returnees. (*See* Doc. 1 at 5.) Indeed, the Government has had many years to deport Gonzalez, and it has failed. This is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Gonzalez's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Gonzalez will be removed in the near future. (Doc. 4.) Instead, the Government extends hope and a placeholder. It relays an assertion from ICE that the agency is working towards executing a third-country removal to Mexico. But the Government readily admits it has not a single document to support this representation. Instead, it promises to file the paperwork if it ever materializes. (*Id.* at 5.) That is not how a burden of proof works. A mere representation from an agency to its lawyers—unbacked by a shred of evidence—cannot justify keeping a man locked in a cell. Because the Government offers nothing to suggest removal to Mexico, or anywhere else, is more likely now than it was decades ago, Gonzalez must be released.

It is easy to see why this outcome might cause unease. Gonzalez is a convicted criminal. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for decades without facing the ultimate immigration consequence. But this Court is

4

bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Gonzalez will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his Order of Supervision. To the extent Gonzalez raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Juan Manuel Gonzalez from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

Respondents shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on May 15, 2026.

Kyle C. Dudek
United States District Judge